# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |  |
|---|---|---|
| | § | |
| AGIS SOFTWARE DEVELOPMENT LLC, | § | |
| | § | |
| Plaintiff, | § | Case No. 2:17-CV-0516-JRG |
| | § | |
| v. | § | |
| | § | |
| APPLE, INC., | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF AGIS SOFTWARE DEVELOPMENT LLC'S
OPPOSITION TO DEFENDANT APPLE, INC.'S MOTION TO TRANSFER
<u>VENUE TO THE NORTHERN DISTRICT OF CALIFORNIA (DKT. NO. 53)</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page No(s).</u>

INTRODUCTION ..................................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 3

      A.    AGIS Software Development LLC, AGIS Inc., and AGIS Holdings, LLC .......... 3

      B.    AGIS's Witnesses ............................................................................... 4

      C.    Apple's Connections to the Eastern District of Texas ............................. 5

ARGUMENT ........................................................................................................... 6

I.     The Applicable Legal Standards for Transfer of Venue ..................................... 6

II.    The Private Interest Factors All Weigh Strongly Against Transfer..................... 7

      A.    Ease of Access to Sources of Proof Weigh Against Transfer................... 7

      B.    This District is More Convenient for Willing Witnesses....................... 8

      C.    Availability of Compulsory Process Does Not Favor Transfer ............ 11

      D.    Judicial Economy Favors This District................................................ 12

III.   The Public Interest Factors Weigh Strongly Against Transfer ......................... 13

      A.    This District's Strong Localized Interest Weighs Against Transfer.................... 13

      B.    Faster Disposition in this District Weighs Against Transfer ............... 14

      C.    The Remaining Public Interest Factors Do Not Support Transfer........ 15

CONCLUSION ...................................................................................................... 15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerielle, Inc. v. Monster Cable Prod., Inc.*,
   No. 206CV382TJW, 2007 WL 951639 (E.D. Tex. Mar. 26, 2007) ...................................9, 12

*Aloft Media, LLC v. Adobe Sys. Inc.*,
   No. 6:07–CV–355, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008).........................6, 10, 12, 14

*In re Apple Inc.*,
   456 Fed. Appx. 907 (Fed. Cir. 2012)......................................................................................14

*Continental Grain Co. v. The FBL-585*,
   364 U.S. 19 (1960).................................................................................................................13

*Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*,
   No. 6:14-cv-751, 2015 WL 11143431 (E.D. Tex. Aug. 31, 2015)...........................................8

*DSS Tech. Mgmt, Inc. v. Apple Inc.*,
   No. 6:13cv919, 2014 WL 6847569 (E.D. Tex. Nov. 7, 2014) ...............................................10

*Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*,
   867 F. Supp. 2d 859 ....................................................................................................9, 12, 14

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009)..............................................................................................15

*Gulf Oil Corp. v. Gilbert*,
   330 U.S. 501 (1947).................................................................................................................7

*In re Horseshoe Entm't*,
   337 F.3d 429 (5th Cir. 2003) ...................................................................................................7

*Mangosoft Intellectual Property, Inc. v. Skype Techs. SA*,
   2007 WL 2008899 (E.D. Tex. July 5, 2007) .........................................................................10

*Mears Techs., Inc. v. Finisar Corp.*,
   No. 2:13-cv-376-JRG, 2014 WL 1652603 (E.D. Tex. April 24, 2014)....................................6

*Network Protection Sciences, LLC v. Juniper Networks, Inc.*,
   No. 2:10-cv-224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) .........................................12, 13

*Network-1 Sec. Sols., Inc. v. D-Link Corp.*,
   433 F. Supp. 2d 795 (E.D. Tex. 2006).........................................................................8, 14, 15

i

*Optimum Power Solutions LLC v. Apple, Inc.*,
    794 F. Supp. (E.D. Tex. 2011) ..........................................................................................10

*Oyster Optics, LLC v. Ciena Corp.*,
    2:17-cv-511-JRG, D.I. 28 at 11 (E.D. Tex. Sept. 22, 2017) ...........................................8

*PersonalWeb Technologies, LLC v. NEC Corp. of Am., Inc.*,
    No. 6:11-CV-655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013) ...........................11, 13

*Regents of Univ. of Cal. v. Eli Lilly & Co.*,
    119 F.3d 1559 (Fed.Cir.1997)...........................................................................................7

*Rossco Holdings Inc. v. Best W. Int'l Inc.*,
    No. H-06-0155, 2006 WL 1007474 (S.D. Tex. Apr. 18, 2006)...........................................9

*Shoemake v. Union Pacific R.R. Co.*,
    233 F. Supp. 2d 828 (E.D. Tex. 2002) ..............................................................................9

*In re Vistaprint*,
    628 F.3d 1342 (Fed. Cir. 2010)........................................................................................13

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) .............................................................................................7

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (*en banc*) ........................................................................7, 8

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009)........................................................................................13

*Voxpath RS, LLC v. LG Elecs. U.S.A., Inc.*,
    No. 2:10-cv-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012)..................................11

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
    No. 2-10:cv-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) .......................................9

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................................1, 6, 14

**Other Authorities**

Fed. R. Civ. P. 26(a) ............................................................................................................12

Rule 3-4(a) ............................................................................................................................8

Plaintiff AGIS Software Development LLC ("Plaintiff" or "AGIS") hereby opposes Defendant Apple, Inc.'s ("Apple") motion to transfer this action to the Northern District of California under 28 U.S.C. § 1404(a) (the "Motion").  (Dkt. No. 53).  This motion should be denied because Apple has failed to show that the Northern District of California is clearly more convenient for party witnesses, non-party fact and expert witnesses, nor has Apple shown that the other relevant factors weigh in favor of transfer.

## INTRODUCTION

Apple has failed to demonstrate that the convenience factors justify transferring this case to the Northern District of California.  While Apple claims that its proposed venue may be more convenient for Apple and its employees, transfer would greatly *inconvenience* AGIS's witnesses as well as many of the expected non-party witnesses.  Instead, Apple ignores AGIS and its founder's ties to this District and omits *any* mention of a consultant in this District identified by AGIS, whom AGIS believes will be a key witness on the development of products and technology related to the Patents-in-Suit.

Without pointing to specifics, Apple claims that seven of its own employees located in California *may* have relevant information and *may* be used as witnesses in this case.  AGIS's party witnesses, who are far less speculative than Apple's, do not live or work anywhere near Northern California, and it would be a tremendous disruption to AGIS's business if AGIS's employees and consultants were forced to travel there to participate in this case.  In fact, aside from its own employees, Apple points to only two potential witnesses who are closer to the Northern District of California than to the Eastern District of Texas.  One is an attorney who prosecuted the Patents-in-Suit, for whom Apple offers no explanation as to why his testimony is required.  The other is a named inventor who lives in Redmond, Washington.  That witness

works for AGIS's sister company, AGIS Inc., and has agreed to travel to Marshall, Texas if the

case remains in the Eastern District of Texas.  This District would be far more convenient for all

of AGIS's other witnesses who live and work in Texas, Florida and Kansas, for whom traveling

to this Court is much closer and easier.  In addition, this District is more convenient for

anticipated non-party witnesses from AT&T, Sprint, and Verizon, who are responsible for

marketing, designing, and whom AGIS believes will provide information about the value of the

accused software.

Apple devotes much of its motion to pointing out the fact that AGIS Software Holding

LLC was formally established as a Texas limited liability company shortly before filing this suit,

but ignores AGIS's other connections to this District and surrounding area.  For example, AGIS

Inc. maintains an office in Austin, a relatively short distance away, and AGIS regularly works

with a consultant in Allen, Texas.  AGIS's founder and CEO, Malcolm "Cap" Beyer, and his

family have longstanding ties to this District, owning property in Texarkana for 150 years.

Apple also focuses on tangential issues such as a lawsuit brought by a related AGIS entity

several years ago in Florida, involving different parties, different patents and different accused

products.[1]   None of the facts relating to that action demonstrate any connection between AGIS

and the Northern District of California.

Although Apple attempts to portray itself as a virtual stranger to this District with no

meaningful connection between its activities in Texas and this action, its largest campus outside

of its California headquarters is located in Austin.  This 1.1 million square foot facility where

Apple currently employs more than 6,000 people has been reported to house Apple's business

---

[1] Apple attaches to its papers a declaration made by Mr. Beyer in 2014 from that action opposing transfer and describing AGIS Inc.'s contacts with Florida.  Dkt. 53-12.  This is misleading.  The issue on that motion was a proposed transfer from the Southern District of Florida to the Northern District of California.  There was no need for Mr. Beyer to elaborate on AGIS Inc.'s connections to the Eastern District of Texas which existed at the time.

operations for the entire Western Hemisphere.  Rubino Decl., at ¶ 2.  It is difficult to believe that *none* of the documents or witnesses relevant to the development or sales of the accused iPhones, iPads, Apple watches, and other devices containing the patented features are located at such a large and important facility.

Finally, because this case has been pending for almost 6 months and is already well into discovery, and because closely related suits are being litigated in this District, judicial economy favors leaving this action in the Eastern District of Texas.  For all of these reasons and those stated in more detail below, Apple's motion should be denied.

## FACTUAL BACKGROUND

### A.    AGIS Software Development LLC, AGIS Inc., and AGIS Holdings, LLC

AGIS, Inc. was founded by former U.S. Marine Cap Beyer in 2004.  AGIS, Inc.'s primary business has revolved around offering the "LifeRing" solution which includes software and a server-based solution used to enable smartphone, tablet, and PC users to easily establish secure ad hoc digital networks.  Beyer Decl., at ¶ 12.  LifeRing 5.0 and its prior versions have been sold to military, defense and first-responder customers, and private industry customers since 2004.  *Id.*  AGIS Inc. also offers the "Assist" solution which is an emergency broadcast and response system connecting employees to a company command center and a network of responders through personal smartphones.  *Id.*

In 2017, Mr. Beyer and the other AGIS Inc. shareholders formed AGIS Holdings, Incorporated ("AGIS Holdings"), a Florida corporation.  *Id.*, at ¶ 7.  AGIS Holdings consists of two subsidiaries, AGIS Inc. and Plaintiff, which is a Texas limited liability company.  *Id.*  AGIS holds the rights, by assignment, to each of the Patents-in-Suit and licenses its patent portfolio to AGIS Inc.  *Id.* at ¶ 8.  AGIS's principal place of business is located at 100 W. Houston Street, Marshall, Texas.  *Id.* at ¶ 9.  AGIS Inc. has offices in Lenexa, Kansas, Jupiter, Florida and

3

Austin, Texas.  All of AGIS and AGIS Inc.'s employees, with the exception of one, are located

significantly closer to this District than the Northern District of California.  *Id*. at ¶¶ 10-22.

### B.    AGIS's Witnesses

AGIS expects to rely on witnesses located in or much closer to this District than to the

Northern District of California.  Mr. Beyer, who is AGIS's CEO and one of two named inventors

on the asserted patents and will be one of AGIS's primary witnesses, lives in Jupiter, Florida,

940 miles from the courthouse in Marshall, and 2,500 miles from Northern California.  *Id*. at ¶ 5;

Rubino Decl. at ¶ 4.  Mr. Beyer possesses highly relevant knowledge regarding the conception

and reduction to practice of the Patents-in-Suit and has longstanding ties to this District.  *See*

Beyer Decl., at ¶¶ 1, 22.  Mr. Beyer's family has owned over 2,500 acres of land in Bowie

County since 1867, and he has owned 412 acres of land in Bowie County since 2001.  *Id.* at ¶ 22.

David Sietsema is expected to be another key fact witness in this case.  Mr. Sietsema has

worked for AGIS Inc. and its related companies for more than 10 years.  *Id.* at ¶ 17.  His

responsibilities include overseeing contracts and licenses for AGIS and its related entities, as

well as ensuring compliance with rules and contractual clauses linked to intellectual property

rights.  *Id.* Mr. Sietsema lives and works in Austin, Texas, *id.*, 1200 miles closer to the

courthouse in Marshall than Northern California.  *See* Rubino Decl., at ¶ 4.

Sandel Blackwell is expected to be another key witness for AGIS.  Mr. Blackwell is the

President of AGIS Inc. and a Director of AGIS Inc. and AGIS.  Mr. Blackwell manages the

development of the software included in the LifeRing and Assist solutions.  Beyer Decl., at ¶ 18.

Mr. Blackwell works at AGIS Inc.'s Lenexa, Kansas office, as well at its office in Jupiter,

Florida.  *Id.*  Mr. Blackwell maintains regular communication with AGIS Inc.'s programmers

and software developers in Florida, Kansas, and Texas, and regularly works with an AGIS

consultant in this District.  *Id.*   Mr. Blackwell's office in Lenexa, Kansas is 444 miles from

Marshall and 1,498 miles to Northern California.  Rubino Decl., at ¶ 4.  Mr. Blackwell owns land

in Jasper County, Texas, has close personal ties to Texas and travels here frequently.  Beyer

Decl., at ¶ 18.

 An important non-party witness for AGIS will be Eric Armstrong, a former AGIS Inc.

employee who is now a consultant for AGIS.  Mr. Armstrong is responsible for designing and

developing client-side and server-side software for the LifeRing and Assist solutions.  Beyer

Decl., at ¶ 16.  Mr. Armstrong lives and works in Allen, Texas, in this District.  He works closely

with Mr. Blackwell and AGIS Inc. employees such as Rebecca Clarke, regarding software

development and quality assurance.  *Id.* at ¶ 15.  Transfer to the Northern District of California

will require Mr. Armstrong to travel approximately 1,482 additional miles to testify at trial, and

will put him beyond the subpoena power of the court.  *See* Rubino Decl., at ¶ 4.

## C. Apple's Connections to the Eastern District of Texas

 Apple's motion lists several possible witnesses who may provide relevant testimony, but

ignores its substantial links to this District, including employees with potentially relevant

information.  Apple maintains several regular and established places of business in Texas,

including the company's second largest campus in Austin, as well as Apple stores in Plano and

Frisco.  Rubino Decl., at ¶¶ 2, 5-6.[2]  Apple has a Data Center Network Team of technical

personnel in Dallas who support Apple's external-facing applications and "provide network

design, operations and software development support," and thus are likely to have relevant

knowledge of product research, design, and development.  *Id.* at ¶ 9.  Apple also employs a CAD

team in Austin who develop and support Apple's mobile products and thus may also have

relevant knowledge.  *Id.* at ¶ 10.  At this point, although AGIS has no way to determine whether

---

[2] Apple is reported to have received over $20 million in funding from the State of Texas in exchange for
its promise to build that facility and hire this large number of people.  Rubino Decl., at ¶ 8.

or how many Apple employees at these locations will need to be called upon to testify, this case should not be transferred based on Apple's unilateral assertions that all of its witnesses are in the Northern District of California.

## ARGUMENT

### I.     The Applicable Legal Standards for Transfer of Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  When seeking a transfer venue for convenience, "the movant bears the burden to clearly demonstrate that a transfer is 'clearly more convenient' than the venue chosen by the plaintiff." *Mears Techs., Inc. v. Finisar Corp.*, No. 2:13-cv-376-JRG, 2014 WL 1652603, at *2 (E.D. Tex. April 24, 2014).  The defendant must do *more* than show that transferee district is a clearly more convenient venue for *it* to defend against the plaintiff's claims; it must show that the transferee district would be "more convenient for *both* parties involved, non-party witnesses, expert witnesses, and in the interest of justice." *Aloft Media, LLC v. Adobe Sys. Inc.*, No. 6:07–CV–355, 2008 WL 819956, at *3 (E.D. Tex. Mar. 25, 2008) (emphasis added); 15 Wright, Miller & Cooper, Fed. Practice and Proc. § 3849 (3d ed. 2009) ("[S]ection 1404(a) refers to all of the parties to the action, which means that their frequently competing conveniences must be taken into account by the court.  Therefore, transfer will be refused on account of this factor if the effect of a change of venue would be merely to shift the inconvenience from one party to the other.").  If the defendant fails to make this showing, "the plaintiff's choice [of venue] must be respected." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) (Volkswagen II); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

In conducting its analysis, the court first determines whether the suit could have been brought in the proposed transferee district.  *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th

Cir. 2004) (Volkswagen I).  If the court answers that question affirmatively, it then evaluates

certain private and public interest factors.  *Id.*  The private-interest factors include: (1) "the

relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure

the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other

practical problems that make a trial case easy, expeditious, and inexpensive."  *Id*.  The public-

interest factors include (1) "the administrative difficulties flowing from court congestion;"

(2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the

forum with the law that will govern the case;" and (4) "the avoidance of unnecessary problems of

conflicts of laws."  *Id*.  Plaintiff's choice of venue is also a relevant consideration.  *In re*

*Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003) ("under Fifth Circuit precedent that the

plaintiff's choice of forum is clearly a factor to be considered" in a transfer of venue analysis).

Although not an enumerated factor, "[c]onsideration of the interest of justice, which includes

judicial economy, 'may be determinative to a particular transfer motion, even if the convenience

of the parties and witnesses might call for a different result.'" *Regents of Univ. of Cal. v. Eli Lilly*

*& Co.*, 119 F.3d 1559, 1565 (Fed.Cir.1997) (citation mitted).  Although this suit could have been

brought against Apple in the proposed transferee district, Apple has failed to demonstrate that

that district is clearly more convenient.

## II.     The Private Interest Factors All Weigh Strongly Against Transfer

### A.     Ease of Access to Sources of Proof Weigh Against Transfer

Apple contends that its potentially relevant "business records," including research,

development, and marketing materials, financial and sales data, and patent licenses, are all

located in or near its headquarters in the Northern District of California, with none in Texas.

Motion at 9.  This Court has previously recognized that where documents can and will likely be

exchanged electronically, this factor does not in fact support transfer.  *Network-1 Sec. Sols., Inc.*

7

*v. D-Link Corp.*, 433 F. Supp. 2d 795, 799 (E.D. Tex. 2006).  Apple has not shown that it would be under hardship to produce any of the evidence in this case electronically.  In fact, Apple has already produced source code under Local Patent Rule 3-4(a) for inspection at the offices of its attorneys in New York, and has made a large document production available to AGIS electronically.  *See* Rubino Decl., at ¶ 11.

Apple's reliance on *Volkswagen II*, 545 F.3d at 316, for the proposition that the ease of access to proof  remains "meaningful" notwithstanding modern technology, is misleading.  In that case, the relevant evidence included the wreckage of an automobile involved in an auto accident.  *Id.*  The court analyzed this factor "in light of the distance that documents, or other evidence, must be transported from their existing location to the trial venue."  Because there is no such physical evidence to be transported in this software patent infringement action, this factor does not favor transfer.[3]

### B.    This District is More Convenient for Willing Witnesses

The cost of attendance for willing witnesses also weighs against transfer.  "In considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of ***key witnesses***."  *Frito-Lay N. Am., Inc. v. Medallion Foods, Inc.*, 867 F. Supp. 2d 859 (E.D. Tex. 2012), at 870 (emphasis added).  "[I]t is the convenience of ***non-party witnesses***, rather than of party witnesses, that is more important and accorded greater

---

[3] Apple's other authority in support of this factor (Motion at 10, n.4) is also distinguishable.  In *Core Wireless Licensing, S.A.R.L. v. Apple, Inc.*, No. 6:14-cv-751, 2015 WL 11143431, at *4 (E.D. Tex. Aug. 31, 2015), the Court relied on the specific identification of Apple's sources of proof which included the form and location of its relevant documents.  Apple has offered no such evidence here.  In *Oyster Optics, LLC v. Ciena Corp.*, 2:17-cv-511-JRG, D.I. 28 at 11 (E.D. Tex. Sept. 22, 2017), transfer was granted in part because, unlike this case, plaintiff did not identify any evidence located in or accessible from the district.  Similarly, in *Kranos*, 2:17-cv-00443-JRG, D.I. 26 at 22, the defendant identified relevant documents located in the transferee forum while, unlike this case, no party identified any relevant evidence in the current forum.  In *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2-10:cv-364-JRG, 2012 WL 506669, at *4 (E.D. Tex. Feb. 15, 2012), also unlike this case, multiple defendants were headquartered in the proposed transferee district, large numbers of witnesses and identified sources of proof were located there, and there were no identified witnesses or evidence in the forum district.

weight in a transfer of venue analysis." *Id.* at 870-71 (emphasis added) (citing *Shoemake v. Union Pacific R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002)).  The moving party must "specifically identify key witnesses and outline the substance of their testimony."  *Aerielle, Inc. v. Monster Cable Prod., Inc.*, No. 206CV382TJW, 2007 WL 951639, at *2 (E.D. Tex. Mar. 26, 2007).

As described above, AGIS expects its key party witnesses at trial to include Mr. Beyer (Jupiter, Florida), Mr. Seitsema (Austin, Texas), and Sandel Blackwell (Lenexa, Kansas).  The Eastern District of Texas is a more convenient venue for each of them than the Northern District of California.  Unlike Apple, AGIS is a small business, AGIS's party witnesses' absence will create severe hardships to AGIS's ability to do business while Apple would likely have no such issues if its witnesses were required to travel to Texas to testify. *See Rossco Holdings Inc. v. Best W. Int'l Inc.*, No. H-06-0155, 2006 WL 1007474, at *3 (S.D. Tex. Apr. 18, 2006) (denying transfer where plaintiff's witnesses and property were in Texas and there was potential hardship to plaintiff which was a small business).  The location of AGIS's key non-party witnesses weighs heavily against transfer as well.  Eric Armstrong, AGIS's consultant, is *located in this District*, and AGIS's technical expert, Joseph C. McAlexander, is in nearby in Richardson, Texas.  *Aloft Media, LLC v. Adobe Sys.*, 2008 WL 819956, at *5 (E.D. Tex. 2008) ("[A] patent trial often revolves around the strength of expert witness testimony, and many experts are also non-party witnesses.") (citing *Mangosoft Intellectual Property, Inc. v. Skype Techs. SA,* 2007 WL 2008899, at *2 (E.D. Tex. July 5, 2007)); Beyer Decl., at ¶ 15; Rubino Decl., at ¶ 12.

Apple asserts that transfer is justified, in part, because seven employees whom it unilaterally selected are "believed to have information relevant to this case are located in the Northern District of California," (Motion at 11) but Apple cannot even confirm that these are

actually going to be their witnesses, let alone key witnesses, and does little to outline the substance of their expected testimony.  Apple summarily dismisses the notion that there may be potential witnesses in its Austin and Dallas locations who may have relevant information relating to the research, design, development, marketing or sales of the Accused Products.  *See* Rubino Decl., at ¶¶ 9-10.   Apple's motion is silent with respect to willing non-party witnesses.  Apple has not met its burden to demonstrate that the convenience of the willing witnesses favors transfer.

The cases cited by Apple on this point are inapposite.  In *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp., 2d 696 (E.D. Tex. 2011), this Court found that convenience of the witnesses favored transfer where plaintiff had no employees or documents in Texas.  Likewise, in *DSS Tech. Mgmt, Inc. v. Apple Inc*., No. 6:13cv919, 2014 WL 6847569, at *3 (E.D. Tex. Nov. 7, 2014), this factor favored transfer where plaintiff's "ephemeral contacts" with this District included lack of any personnel or documents in the District when suit was filed and that plaintiff was actually a Delaware corporation with a principal place of business in Virginia.  Here, AGIS has an office and a consultant in this District, its sister company has an office in Austin, and its CEO who is a named inventor on its patents, has longstanding business and personal connections to this District.  Finally, in *Voxpath RS, LLC v. LG Elecs. U.S.A., Inc*., No. 2:10-cv-160-JRG, 2012 WL 194370, at *4 (E.D. Tex. Jan. 23, 2012), this factor weighed in favor of transfer where nine groups of defendants identified party witnesses located in or near the proposed transferee district, the plaintiff did not identify *any* witnesses located in the forum district, and non-party witnesses were from other countries.  Here, only Apple claims to have witnesses located in the proposed transferee district; AGIS's witnesses are all in or closer to the Eastern District of Texas.  These cases are not comparable and do not require transfer.

### C.      Availability of Compulsory Process Does Not Favor Transfer

More third-party witnesses likely to testify in this case reside in or around the Eastern

District of Texas than in the Northern District of California.  For this reason, this factor weighs

against transfer.  *See PersonalWeb Technologies, LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-

655, 2013 WL 9600333, at *4 (E.D. Tex. Mar. 21, 2013).  In addition to the non-party witnesses

AGIS has identified to establish damages, AGIS will need to rely on evidence from non-parties

to determine the market value of the features enabled by the Patents-in-Suit, as well as consumer

surveys and marketing information to show demand for particular features. This evidence will

come from cellular carriers and phone sellers including AT&T, Sprint, and Verizon.  Rubino

Decl., at ¶ 13.[4]   AT&T's corporate headquarters are in Dallas; Sprint's headquarters are in

Overland, Kansas; and Verizon's headquarters are in New York.  Each of these is substantially

closer and more convenient to this District than to the Northern District of California.[5]

Apple points to two potential non-party witnesses, neither of which justify transfer.

Daniel Burns is the prosecuting attorney on the Patents-in-Suit whom Apple believes is in Santa

Clara, California.  Apple has not made any allegation of inequitable conduct that would require

his testimony.  *See Aerielle, Inc.*, 2007 WL 951639, at *2; *Aloft Media, LLC v. Adobe Sys. Inc.*,

No. 6:07-CV-355, 2008 WL 819956, at *5 (E.D. Tex. Mar. 25, 2008) (defendants failed to

identify how potential third-party witness inventors on patents would be important to their case

at trial); *Frito-Lay N. Am., Inc.*, 867 F. Supp. 2d at 870.  The other witness, Christopher Rice,

---

[4] Given that mobile carriers are frequently involved in developing the software applications, such as maps and messaging carried by their networks, these cellular carriers may also possess relevant technical information relating to their contributions to Apple's accused software.
[5] For example, based on AGIS's initial investigation, it appears that Bahadir Koseli, a Lead Product Marketing Manager at AT&T who works in its Dallas office may be called to provide information relating to the value of the accused features.  Rubino Decl., at ¶ 14.  Similarly, Keith Gladhill, who works at Verizon as Director of Consumer Marketing in Dallas, can provide information relating to value and marketability of the accused features.  Rubino Decl., at ¶ 15. AGIS plans to serve subpoenas on at least the above-mentioned third-party witnesses.

one of the named inventors on the Patents-in-Suit, is located in Redmond, Washington.  Motion at 7.  Mr. Rice is an employee of AGIS, Inc.[6] who has told AGIS he would be willing to travel to Marshall, Texas to testify (Beyer Decl., ¶¶ 20-21), which negates his distance from Texas as a factor favoring transfer.  *Aerielle, Inc.*, 2007 WL 951639, at *2 (convenience of witnesses did not support transfer where plaintiff provided affidavits stating that "key" are willing to travel to Marshall, Texas).

Apple also argues that transfer is justified on the grounds that "any former Apple employees" who potentially have relevant knowledge may still be located in the proposed transferee district and thus subject to its subpoena power.  Motion at 12.  However, Apple has not identified any such former employees, where they are located, nor any specific information they are believed to possess.  Apple's reliance on *Network Protection Sciences, LLC v. Juniper Networks, Inc.*, No. 2:10-cv-224, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) is misplaced.  Motion at 12-13.  In that case, this Court held that it was reasonable to assume that some former employees still resided within 100 miles of the transferee district because the former employer specifically attested that nine former employees had knowledge about the accused products and provided their last known addresses which were in the transferee district.  2012 WL 194382, at *5.  Here, Apple has identified no such former employees.

### D.   Judicial Economy Favors This District

The Federal Circuit has held that "judicial economy can be a paramount consideration" in the transfer analysis.  *See In re Vistaprint,* 628 F.3d 1342, 1347 (Fed. Cir. 2010) (quoting *In re Volkswagen of Am., Inc*., 566 F.3d 1349, 1351 (Fed. Cir. 2009)) (internal quotations omitted).  Parallel actions on the same four Patents-in-Suit are presently pending against Huawei, LG, ZTE, and HTC in this Court.   *See* Case Nos. 2:17-cv-00513, 2:17-cv-00514, 2:17-cv-00515, 2:17-cv-

---

[6] AGIS's initial disclosures under Fed. R. Civ. P. 26(a) have been amended to reflect this.

00517 (E.D. Tex.).  Adjudication of all five actions by this Court, rather than in duplicative suits in multiple jurisdictions serves the interests of judicial economy and weighs heavily against transfer.  *See In re Volkswagen*, 566 F.3d at 1351 ("Although these cases may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources"); *PersonalWeb Technologies, LLC*, 2013 WL 9600333, at *5 ("[T]he existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer."); *see also Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960).

## III.    The Public Interest Factors Weigh Strongly Against Transfer

### A.    This District's Strong Localized Interest Weighs Against Transfer

This District has a substantial localized interest in resolving this dispute.  AGIS is a Texas entity with a principal place of business, full-time employees and a consultant located in and around this District.  Its founder and CEO has longstanding personal and business ties to this District.  AGIS's substantial contacts with the District, and corresponding lack of contacts with California weighs against transfer.  Apple cites *Network Protection Sciences, LLC v. Juniper Networks, Inc*., No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) to suggest that "recent and ephemeral contacts with a forum, which are nothing more than a construct for litigation, should not be considered in a § 1404(a) analysis"  There, however, the plaintiff's managing members both resided in the proposed transferee forum, while the plaintiff had no employees or other presence in the forum.  Here, AGIS has an office in the District; is part of a group of companies that has an office in Austin; works closely with a consultant in the District; and has a CEO with close personal and business ties to the District.  *See In re Apple Inc.*, 456 Fed. Appx. 907, 909 (Fed. Cir. 2012) (denying Apple's petition for writ of mandamus seeking transfer because "Although in Apple's papers much is made of SimpleAir's recent and

13

ephemeral connections to the Eastern District of Texas—SimpleAir incorporated in Texas and established an office one month before filing this suit—the district court gave that consideration no weight in its analysis.").  Apple employs thousands of Texas residents who live and work in and around this District, further strengthening the localized interest of this District.  Rubino Decl., at ¶¶ 2, 5-8.  *See Frito-Lay N. Am., Inc.*, 867 F. Supp. 2d at 872 (a local interest can exist when a suit may "call into question the reputation of individuals that work and conduct business in the community").  This District has at least as strong a local interest in resolving this matter as the Northern District of California.[7]

### B.    Faster Disposition in this District Weighs Against Transfer

Apple relies on the relative rankings for "highest weighted filings per judge" as support for its argument that the second public interest factor favors transfer.  Motion at 15.  However, the relevant inquiry under this factor is actually "[t]he speed with which a case can come to trial and be resolved[.]"  *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).  As the U.S. District Courts Median Time Intervals from Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During 12 Month Period Ending March 31, 2017 indicates, the median time for cases to go from filing to trial in the Northern District of California is 25.4 months, compared to 21.4 months in this District." (http://www.uscourts.gov/sites/default/files/data_tables/fjcs_c5_0331.2017.pdf.).  Rubino Decl., at ¶ 15, Ex. 12, U.S. District Courts Median Time Intervals.  Since the time to trial is in fact faster in this District, this factor also weighs against transfer.

---

[7] Even if the Court were to find that both this District and the transferee district have some interest in the outcome of this case, this factor is, at most, neutral and therefore also would not support transfer.  *See Aloft Media, LLC*, 2008 WL 819956, at *8 (holding in a patent infringement action involving products sold nationwide that neither forum had greater stake in the outcome of the litigation and that this factor was neutral and did not weigh in favor of transfer); *Network-1 Sec. Sols., Inc.*, 433 F. Supp. 2d at 801.

**C.     The Remaining Public Interest Factors Do Not Support Transfer**

While both this District and the Northern District of California are familiar with patent law, rendering this factor neutral, this Court has previously considered its own extensive experience with patent litigation as disfavoring transfer.  *See Network-1 Sec. Sols., Inc.*, 433 F. Supp. 2d at 801 (E.D. Tex. 2006).  Moreover, like Apple, AGIS does not believe that conflict of law issues are likely to arise in either venue, rendering this factor neutral.  Given the fact that it is Apple's burden to prove that transfer is more convenient, these neutral factors also do not support transfer.  A scheduling order has already been set by the Court here and discovery is under way.  The LG and Huawei defendants have already been consolidated, and AGIS expects Apple, HTC, and ZTE to also be consolidated into that matter.  Further, a protective order, e-discovery order, and docket control order have already been agreed to.  Transfer would undoubtedly delay the trial of this action.

<u>**CONCLUSION**</u>

For the foregoing reasons, including that the private and public interest factors do not demonstrate that Apple's proposed transferee district is clearly more convenient than this District, AGIS respectfully requests that this Court deny Apple's motion to transfer this action to the Northern District of California in its entirety.


Dated: December 11, 2017                     Respectfully submitted,

                                             **BROWN RUDNICK LLP**

                                             /s/ *Vincent J. Rubino, III*

                                             Alfred R. Fabricant
                                             New York Bar No. 2219392
                                             Email: afabricant@brownrudnick.com
                                             Peter Lambrianakos
                                             New York Bar No. 2894392

15

Email: plambrianakos@brownrudnick.com
Vincent J. Rubino, III
New York Bar No. 4557435
Email: vrubino@brownrudnick.com
Alessandra C. Messing
New York Bar No. 5040019
Email: amessing@brownrudnick.com
John A. Rubino
New York Bar No. 5020797
Email: jrubino@brownrudnick.com
Enrique W. Iturralde
New York Bar No. 5526280
Email: eiturralde@brownrudnick.com
**BROWN RUDNICK LLP**
7 Times Square
New York, NY 10036
Telephone: 212-209-4800
Facsimile: 212-209-4801

Samuel F. Baxter
Texas Bar No. 01938000
Email: sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
Email: jtruelove@mckoolsmith.com
**McKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
Marshall, Texas 75670
Telephone: 903-923-9000
Facsimile: 903-923-9099

***ATTORNEYS FOR PLAINTIFF AGIS
SOFTWARE DEVELOPMENT LLC***

16

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on December 11 2017, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Vincent J. Rubino, III*
Vincent J. Rubino, III